IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MONTÉ DESHAWN TAYLOR, | ) | |
|     Petitioner, | ) | Civil Action No. 7:22cv00230 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Robert S. Ballou |
|     Respondent. | ) | United States District Judge |

Monté Deshawn Taylor, a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging a judgment order entered by the Roanoke City Circuit Court on August 19, 2019. The respondent has filed a motion to dismiss, to which Taylor has responded, making this matter ripe for consideration. For the reasons stated below, I will grant the respondent's motion to dismiss.

## I. BACKGROUND

A grand jury in the City of Roanoke indicted Taylor on February 5, 2018, for first-degree murder, attempted murder, aggravated malicious wounding, shooting at an occupied vehicle, possession of a firearm by a convicted felon, and three counts of using a firearm in the commission of a violent felony. On February 25, 2019, Taylor pled "not guilty" to all charges. Before accepting his plea and commencing the jury trial, the court conducted a colloquy with defendant to determine if he understood the charges and potential sentences, was satisfied with his attorney, understood his right to trial by jury, and entered his pleas knowingly and voluntarily. Trial R.[1] at 536 – 537.

---

[1] Citations herein to "Trial R." refer to the electronic records of the Roanoke City Circuit Court in Taylor's criminal trial, *Commonwealth v. Taylor*, Record No. CR18000281-00, using the page numbers typed in the lower right corner of each page. Citations to "Habeas R." refer to the electronic records of the Supreme Court of Virginia in the state habeas proceeding, *Taylor v. Clarke*, Record No. 211222, using the page numbers typed in the lower left corner of each page.

Over the next three days, the prosecution introduced the testimony of 15 witnesses, and the defense introduced testimony from another 10 witnesses. The defense moved to strike the evidence at the conclusion of the prosecution's case and again at the conclusion of all the evidence, and the court denied the motions. Before reviewing jury instructions with counsel, the court excused the jury at 2:50 p.m., to return the following morning for closing arguments and deliberations.

On February 28, 2019, when he returned to court, Taylor and his counsel advised the court that Taylor wished to change his pleas from "not guilty" to "no contest." Before accepting the no contest pleas, the court again conducted a colloquy with Taylor to determine that his pleas were knowingly and voluntarily entered. Trial R. at 1111 – 1116. The court dispensed with a summary of the evidence, as Taylor agreed they had already heard the evidence during the trial.

The court of appeals summarized the evidence in the case as follows:

> [O]n January 5, 2018, Troy Gastelo accompanied his friend Michael Santamarina to the parking lot of an apartment building where Santamarina had arranged to conduct a drug transaction with people unknown to Gastelo. Santamarina drove his vehicle to the location while Gastelo was in the front passenger's seat. Several minutes after Santamarina backed his car into a spot, Gastelo observed a man he later identified as Dejon White arrive in a car that White then parked several spots away from Santamarina, on the side of Gastelo's passenger window. After White remained sitting in his car for several minutes, Santamarina cracked open his door, at which point White approached Santamarina's vehicle. When White was about two parking spaces away, Gastelo saw him dart towards the back of Santamarina's vehicle. As White reached the rear of the vehicle, another man came out of a nearby door. The man came up to Gastelo's window area and began shooting a silver firearm. Santamarina was shot in the head and ultimately died at the hospital; a fragment of another bullet became lodged in Gastelo's spinal column. In addition to forensic and other circumstantial evidence linking appellant to the crimes, Gastelo identified appellant at trial as the shooter.

2

> In his defense, [Taylor] offered evidence casting suspicion on two other potential perpetrators, identical twins who were known associates of [Taylor]. The twins resembled each other closely, with a face tattoo sported by only one of them as the primary distinguishing feature. The twins were recognizable in the neighborhood. Over the course of the trial, several witnesses who testified to seeing two men running from the crime scene shortly after the gunshots were fired testified that the men were not the twins and did not like one another. [Taylor] did not testify and offered no alibi evidence.

*Taylor v. Commonwealth*, No. 1450-19-3, slip op. at 3–4 (Va. Ct. App. March 16, 2020).

According to other testimony in the record, witnesses had reported that the two shooters ran into a building at another apartment complex on a nearby street. Officers went to that location and established a perimeter as officers and K-9 units searched for the suspects. Officers searching the woods behind the complex found a cellphone, headphones, a cartridge, and a black bag containing a silver 9mm handgun and a 10mm Glock handgun. The silver 9mm handgun had Taylor's fingerprint on it, and the shell casings at the scene of the shooting were consistent with the firearms found in the wooded area. Also, as noted by the Court of Appeals, when Taylor asked the trial court to accept his no contest plea, Taylor apologized to Santamarina's mother and for wasting the trial court's time. *Id.* at 4. The court found him guilty of all charges and ordered a presentence report.

When appearing in court on July 29, 2019, for his sentencing hearing, Taylor moved to withdraw his no contest pleas, stating that he had made the decision to change his plea in a state of panic and exhaustion. The court denied the motion. Following a short sentencing hearing and consideration of the presentence report, voluntary sentencing guidelines, and victim impact statements, the court imposed a total sentence adding up to life plus 60 years, all suspended except for 50 years, conditioned on 10 years of probation. The sentence was less than requested by the Commonwealth and lower than the guideline mid-point of 59 years, 10 months. In

3

addition to the 50 years of active time for these charges, the convictions resulted in revocation of his probation on two earlier offenses, for which he received an additional 1 year plus 12 months.

Taylor appealed his convictions to the Court of Appeals, arguing that the trial court erred in failing to conduct a sufficient voir dire before allowing him to change his plea.  The court affirmed the convictions in a per curiam opinion on March 16, 2020, and a three-judge panel denied his appeal on April 30, 2020.  The Supreme Court of Virginia refused his further petition for appeal on December 16, 2020.  Taylor did not petition the United States Supreme Court for certiorari.

On December 15, 2021, the day before the state statute of limitations expired, Taylor placed a petition for state habeas corpus in the prison mail to the Supreme Court of Virginia, which the court received on December 22, 2021.  In the section for stating the grounds for relief and supporting facts, Taylor referred to a memo to be attached.  His cover letter to the clerk, however, advised the clerk to expect his memorandum of law in a separate envelope during the week of December 27, 2021, or January 3, 2022.  Habeas R. at 7.  The memo was signed and dated January 5, 2022, stamped received by the prison mail mailroom on January 11, 2022, and received by the Court on January 22, 2022, all dates past the deadline for filing the petition.  *Id.* at 8, 38–39.  The clerk of court advised him that he needed to file a motion to amend, or the memorandum would be dismissed as a prohibited second petition.  Taylor filed a motion to amend. The court dismissed his habeas petition on March 11, 2022, for failure to challenge the legality of his detention, implicitly denying the motion to amend.  Taylor's petition for rehearing was refused May 12, 2022.

He timely filed the current § 2254 petition on April 29, 2022, raising the following claims for ineffective assistance of trial counsel:

1.   Counsel failed to file a motion to dismiss the indictment for shooting at an occupied vehicle as unconstitutionally vague.

2.   Counsel failed to object to the life sentence for murder, with all but 25 years suspended.

3.   Counsel failed to move to suppress evidence of the GSR kit, when the GSR test was taken without a search warrant and without giving Taylor *Miranda*[2] warnings, thereby violating Taylor's rights under the Fourth, Fifth, and Sixth Amendments to the U.S. Constitution.

4.   Counsel failed to move to suppress the firearm, found in a wooded area behind the apartment complex, on the grounds that there was no search warrant describing the specific wooded area to search.

5.   Counsel failed to request an in-person lineup when the victim failed to identify defendant in a photo lineup.

6.   Counsel failed to explain his right to a jury trial before advising him to change his plea after the close of the evidence.

7.   Counsel failed to move to strike all charges because the criminal statutes were unconstitutional under Article 1, Section 10 Contracts Clause and Fourteenth Amendment's Immunities Clause.

8.   Counsel failed to move for dismissal for lack of subject matter jurisdiction under Va. Code §§ 17.1-513 and 19.2-239, pursuant to Article 6, Section 2, Supremacy Clause; article 1, Section 8, Clause 17, and U.S.P.O. domestic mail manuals.

---

[2] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court announced a rule requiring officers to advise suspects of their right to remain silent and right to have an attorney before conducting custodial interrogation. These rights are now called *Miranda* warnings.

9.  Counsel failed to argue that Virginia's criminal statutes violated the Fourteenth

Amendment Immunities Clause.

## II. LIMITATIONS ON HABEAS REVIEW

### A. Legal Principles

A federal court may grant a petitioner habeas relief from a state court judgment "only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254. A federal district court reviewing a § 2254 petition is also limited by

the separate but related doctrines of exhaustion, procedural default, and independent and

adequate state law grounds. These procedural doctrines promote the principles of finality,

comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing

disruption of state judicial proceedings, and allowing states the first opportunity to address and

correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S.

722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can

be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner

must present his federal constitutional claims to the highest state court, on the merits, before he is

entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). If a

petitioner still has the right to pursue a state remedy by any available procedure, he has not

exhausted his claim. 28 U.S.C. § 2254(c).

A separate but closely related issue is the doctrine of procedural default. If a state court

has clearly and explicitly denied a petitioner's claim based on a state procedural rule that

provides an independent and adequate ground for the state court's decision, that claim is

procedurally defaulted for purposes of habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th

6

Cir. 1998).  A state procedural rule is independent if it does not depend on a federal

constitutional ruling, and it is adequate if it is firmly established and regularly applied by the

state court.  *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998).  A claim that has not been

presented to the highest state court and would be procedurally barred as untimely or successive if

the petitioner tried to present the issue to the state court now is considered simultaneously

exhausted and defaulted.  *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner

must show both cause for the default and actual prejudice caused by the claimed federal

violation.  *Coleman*, 501 U.S. at 750.  Typically, cause for procedural default requires the

existence of some objective factor, external to the defense and not fairly attributable to the

prisoner.  *Id.* at 756–57.  To show prejudice to overcome procedural default, a petitioner must

show that the claimed violation worked to his "actual and substantial disadvantage, infecting his

entire trial with error of constitutional dimensions."  When a petitioner seeks federal relief for a

defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court introduced a

special test for cause and prejudice in *Martinez v. Ryan*, 566 U.S. 1, 13–15 (2012).  Only in cases

alleging ineffective assistance of counsel, cause and prejudice can be shown if each of the

following requirements is met: (1) the claim of ineffective assistance of trial counsel is a

"substantial claim;" (2) the "cause" is the lack of counsel or ineffectiveness of counsel under the

standards of *Strickland v. Washington*, 466 U.S. 668 (1984); (3) the state post-conviction

proceeding was the first time ineffective assistance of counsel was raised; and (4) the state post-

conviction proceeding was the first one in which petitioner was actually or effectively allowed

by state law to raise the claim.  *Id.* at 13–15; *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

**B. Taylor's Claims are Procedurally Defaulted**

Taylor's claims for ineffective assistance of counsel were never considered on the merits by the Supreme Court of Virginia, the state's highest court, because his initial petition did not identify any claims. The amended petition, identifying the claims, was untimely. This was a procedural dismissal, meaning that the ineffective assistance of counsel claims raised in his untimely memorandum of law were exhausted and defaulted, if the state high court's ruling was based on an independent and adequate state law.

The court's ruling was based on Virginia Code § 8.01-654, which provides when and where a habeas petition should be filed and what contents the petition should contain. The petition must "show by affidavits or other evidence that the petitioner is detained without lawful authority." Va. Code § 8.01-654(A)(1). Further, "the petition shall contain all allegations the facts of which are known to petitioner at the time of filing." Va. Code § 8.01-654(B)(2). In Taylor's timely filed state petition, in response to the direction to "state the grounds which make your detention unlawful including the facts on which you intend to rely," Taylor wrote "Please see the attached memorandum of law for the specific grounds; the facts and laws that petitioner intends to rely upon in support of his petition." Habeas R. at 3. The memorandum of law was not attached, however, and his letter to the clerk makes clear that this failure was not an oversight. *Id.* at 7. The memorandum of law was placed in the prison mailroom on January 11, 2022; the motion to amend the petition to include the memorandum of law was placed in the prison mail on February 7, 2022.

Under the Virginia Rules of Court, amendment of a habeas petition is permissible "[i]f the statute of limitations has not expired." Rule 5:7(e), Va. R. S. Ct. Further, the Virginia court has long held that new claims in an amended petition do not relate back to the date the petition

was filed; such new claims are considered filed on the date that the amended petition is filed.

*Morrisette v. Warden, Sussex I State Prison*, 613 S.E.2d 551, 555 n.3 (Va. 2005). *See also*

*Juniper v. Warden of Sussex I State Prison*, 707 S.E.2d 290, 307 (Va. 2011). If the amended

petition is filed after the statute of limitations has run, then any new claims in the petition are

time-barred. *Id.* None of Taylor's claims were raised in the timely petition because the critical

part of the petition, the grounds for relief and the factual basis, were not included at all.

The filing requirements and state statute of limitations are independent state laws, having

no relationship to federal law. Because the court has consistently applied the rule preventing

new claims from relating back to the date of original filing, the court's procedural dismissal of

Taylor's state habeas petition was based on an independent and adequate state law ground.

Accordingly, the claims must be treated as simultaneously exhausted and defaulted for purposes

of habeas review. *Bassette*, 915 F.2d at 936–37.

**C.   Cause and Prejudice Analysis**

Taylor's claims allege ineffective assistance of counsel. Accordingly, he can overcome

his procedural default if he meets the requirements set forth in *Martinez*. 566 U.S. at 13–15. In

Virginia, claims of ineffective assistance of counsel must be raised in a habeas corpus

proceeding, not on direct appeal. *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001). The

state habeas proceeding was the first time Taylor raised these issues. He did not have counsel

during the state habeas proceedings; if he had, the procedural default would likely not have

occurred. The only remaining criteria is that his ineffective assistance claims must be

"substantial." A claim is substantial if it has some merit. *Martinez*, 566 U.S. at 14. Therefore, I

must look at the merits of his claims to see if he has overcome procedural default on any of them.

## III. DISCUSSION

When a defendant enters a guilty plea (or no contest plea), that breaks the chain of events in the criminal process. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). When entering his plea, he waives all non-jurisdictional defects in the proceedings that occurred before the entry of the plea, except for challenges to the voluntary and intelligent nature of the plea. *United States v. Moussaoui*, 591 F.3d 263, 280–81 (4th Cir. 2010).

### A. Waived Claims

Six of Taylor's nine claims are considered waived by his guilty plea, and therefore, they could not be considered even if they had not been procedurally defaulted. Claim 1 alleges that counsel failed to file a motion to dismiss the charge for shooting into an occupied vehicle under Virginia Code § 18.2-154, on the grounds that the statute is unconstitutionally vague. Likewise, claims 7 and 9 challenge counsel's failure to argue that all the criminal statutes are unconstitutional under the Contracts Clause of the Constitution and under the Immunities Clause of the Fourteenth Amendment. Under Virginia law, motions challenging the constitutionality of charging statutes must be filed, in writing, at least seven days before trial. Va. Code § 19.2-266.2(A)(iii) and (B); Rule 3A:9(b)(1), Va. S. Ct. Rules. By the time Taylor chose to plead no contest, he knew such motions had not been filed, and if he had concerns about the validity of the statutes, he should have raised them long before. By choosing to plead no contest, Taylor waived his right to challenge issues that he knew or should have known existed.

Counsel's alleged failure to seek suppression of the GSR kit (claim 3) and of the firearm (claim 4) were also waived by entry of his plea, as was the claim that his attorney failed to request an in-person line-up when the victim failed to identify Taylor in a photo line-up (claim 5). Claims 3 and 4 raise Fourth Amendment issues and Claim 5 raises Fifth Amendment due

process concerns. Such motions are also required to be in writing and filed at least seven days before trial. Va. Code § 19.2-266.2(A)(i) and (B). Failure to raise the issues in that manner constitutes a waiver of the issues. Rule 3A:9(b)(1).

Because Taylor waived his right to raise claims 1, 3, 4, 5, 7, and 9, he cannot succeed on those claims on the merits. Thus, they are not substantial claims, and I must dismiss them.

## B. Remaining Claims

To determine whether Taylor's remaining claims have some merit, I must use the standard for evaluating ineffective assistance of counsel claims as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Id.* at 687. If either prong is missing, the petitioner cannot prevail.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions and were made in the exercise of reasonable judgment. *Id.* at 689–90.

To establish prejudice under *Strickland*, a petitioner must show that there was "a reasonable probability that the outcome of the proceedings would have been different." *Id.* at 694. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.*

1. <u>Failure to Object to Sentence</u>

Taylor contends in claim 2 that his counsel erred in failing to object to the court's imposition of a life sentence for murder, with all but 25 years suspended. He does not suggest on what grounds his attorney should have objected. I find that counsel's performance on this issue was not deficient, nor has Taylor shown a reasonable probability that the outcome would have been different.

First-degree murder under Virginia Code § 18.2-32, the section under which Taylor was charged and convicted, is a Class 2 felony. The sentence prescribed by law for a Class 2 felony is "imprisonment for life or for any term not less than 20 years." Va. Code § 18.2-10(b). Based on the Sentencing Guideline worksheets calculated for Taylor's eight convictions combined, the recommended sentencing midpoint was 59 years, 10 months. Trial R. at 324, 327. Had he been convicted only of first-degree murder, with no additional offenses, his guideline midpoint would have been 54 years, 3 months because he was a category II offender with a bad conviction record for other crimes of violence. Counsel argued the unique facts of the case (including that another defendant was the shooter who actually killed the decedent) and mitigating factors (Taylor's youth and amenability to redemption and that Taylor himself was a victim of gun violence), and counsel asked the court to suspend all but 25 years total of whatever sentences he imposed on Taylor for the package of eight crimes (which included mandatory minimum sentences of 18 years). Trial R. at 1147–1149.

The court imposed a total sentence of life plus 60 years, suspending all but 50 years, resulting in an active sentence below the guideline midpoint of 59 years, 10 months, and below the two life sentences plus 33 years, suspended after serving 60 years, requested by the prosecution. Counsel had requested a lower sentence, active time of 25 years instead of 50+

years, but the court chose the sentence it thought just.  Taylor has not offered any grounds upon

which his attorney could have objected to the sentence imposed, especially because the sentence

was below the guideline recommended midpoint.  Further, he has not shown that the court would

have changed its ruling based upon an objection, especially when counsel's request for a lower

sentence had already been implicitly denied.  Counsel is not required to pursue meritless

objections.  *United States v. Mason*, 774 F.3d 824, 833 (4th Cir. 2014).  Thus, Taylor has not

shown deficient performance, nor has he shown any prejudice from counsel's failure to object to

the sentence. Claim 2 is not substantial.

>   2.  Failure to Advise of Right to Jury Trial

In claim 6, Taylor alleges that counsel failed to explain his right to a jury trial before

advising him to change his plea after the close of the evidence.  Given that Taylor sat through

three days of a jury trial, hearing all the evidence, before deciding to change his plea, this claim

almost needs no response.

Before his trial began on February 25, 2019, the trial court arraigned Taylor and

conducted a pre-trial colloquy with him.  A portion of the discussion was not recorded due to a

malfunction in the recording equipment, according to the court reporter.  Trial R. at 536.  What

was recorded included Taylor's statement that he understood the charges against him and was

completely satisfied with his lawyer.  *Id.*  The colloquy ended as follows:

>   THE COURT:  All right. You have the absolute right to have a
>   trial by jury, we talked about this last Thursday, do you still wish
>   to be tried by a jury?
>
>   MR. TAYLOR:  Yes, sir.
>
>   THE COURT:  All right. Is there anything else that you would like
>   to say or do you have any questions right now?
>
>   MR. TAYLOR:  No, sir.

> THE COURT:  Okay.  I again find that your pleas of not guilty are freely and knowingly and intelligently given.

*Id.* at 537:7–15.

After the jury was selected and sworn, all evidence for the prosecution and all evidence for the defense was presented.  On February 29, Taylor changed his plea to no contest.  Before accepting his change of plea, the court conducted another colloquy, including the following exchange:

> THE COURT:  Have you had a chance to discuss the charges, their elements and any possible defenses with Mr. Thompson?
>
> MR. TAYLOR:  Yes, sir.
>
> THE COURT:  Okay.  After those discussions and after hearing the evidence at trial, is it your decision and your decision only to plead no contest?
>
> MR. TAYLOR:  Yes, sir.
>
> THE COURT:  Are you pleading no contest freely and voluntarily?
>
> MR. TAYLOR:  Yes, sir.
>
> THE COURT:  Has anyone forced or threatened or tricked you into pleading no contest?
>
> MR. TAYLOR:  No, sir.
>
> THE COURT:  Do you understand that the plea of no contest will have the same affect (sic) as a plea of guilty in finding by the Court?
>
> MR. TAYLOR:  Yes, sir.
>
> THE COURT:  Okay.  Do you understand the maximum penalties for all of the murder charge (sic) up to life in prison, do you understand that?
>
> MR. TAYLOR:  Yes, sir.

14

*Id.* at 1112–1113.

Taylor's first plea colloquy, under oath, acknowledges that he understood he had an absolute right to a jury trial, and that he had discussed this with the judge the previous Thursday. His second plea colloquy confirms that he chose for himself to change his plea after hearing the evidence at the jury trial and discussions with his lawyer.  In the absence of extraordinary circumstances, the truth of sworn statements made during a plea colloquy is "conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221.  Taylor affirmed under oath his understanding that he had "the absolute right to have a trial by jury."  Then he sat through most of a complete trial before changing his plea.  The conclusory allegations in his petition/memorandum do not reveal any extraordinary circumstances that would give us a reason to disregard his sworn statements.  Even if counsel had not explained his right to a jury trial, which seems highly unlikely given the procedural posture of the case, Taylor told the court that he understood he had this right, and he exercised that right until he decided to change his plea. When the court advises a defendant of his rights, and the defendant acknowledges understanding, then any failure of counsel to warn has been remedied.  The defendant can no longer claim that counsel's failure to advise him of the same rights caused any prejudice.  Taylor has offered no evidence to contradict his sworn statement that he knew he had the absolute right to a jury trial, and therefore, whatever counsel told him or did not tell him did not play a role in his decision to change his plea.  Claim 6 is completely without merit.

### 3. Failure to Seek Dismissal for Lack of Subject Matter Jurisdiction

In claim 8, Taylor alleges that counsel was ineffective for failing to seek dismissal of all charges on the grounds that the court lacked subject matter jurisdiction under Virginia Code §§ 17.1-513 and 19.2-239; U.S. Const. art. VI, § 2 (Supremacy Clause); and U.S. Const. art I, § 8,

cl. 17.   Counsel was not ineffective for failing to file such a motion, because the Circuit Court of Roanoke had jurisdiction over Taylor's trial, and counsel is not required to engage in the filing of futile motions.  *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010).

Virginia Code § 19.2-239 provides that circuit courts have exclusive original jurisdiction over matters brought by indictment for offenses committed within their geographical jurisdiction. Code § 17.1-513, which confers jurisdiction on circuit courts over criminal matters appealed from lower courts, is not relevant, as Taylor was indicted on each of his charges, making the circuit court the court with original subject matter jurisdiction.  Article I, section 8 of the Constitution discusses the legislative powers delegated to the U.S. Congress, matters on which the federal legislature has authority to adopt laws.  Nothing in there is relevant to the jurisdiction of a state court over state-law criminal matters.  Neither does the Supremacy Clause have any effect on the subject matter jurisdiction of the state courts over crimes committed in the states.

Claim 8 is not a substantial claim.

## IV. CONCLUSION

Taylor has not overcome the procedural default of his claims for ineffective assistance of counsel.  Accordingly, I will grant the respondent's Motion to Dismiss.

I decline to issue a certificate of appealability because Taylor has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural rulings to be debatable or wrong.

A separate Final Order will be entered this date.

Enter:  December 21, 2023

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge